UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO:

JAMELL M. DEMONS

    Petitioner

v.

GREGORY TONY, SHERIFF OF BROWARD COUNTY;
AND BROWARD COUNTY SHERIFF'S OFFICE

    Respondent.
_____/

## PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

The Petitioner, JAMELL DEMONS, by and through the undersigned counsel, petitions this Court for a Writ of Habeas Corpus pursuant to Title 28 U.S.C. § 2241, asking the Respondents to appear and Show Cause why Jamell Demons should not be immediately released from custody for egregious violations of the United States Constitution. In support thereof Petitioner states the following:

### INTRODUCTION

The Petitioner Jamell Demons seeks his immediate release because he is being illegally detained under conditions that violate the First, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution. Demons is a black male whose current detention conditions shock the conscience and could not even be imagined in this day and age even in a third-world country that has no guard rails protecting human decency and dignity.

For over three years, Petitioner Jamell Demons has not been permitted to make a single phone

1

call or have a single visit with his family or any member of the outside world, including not seeing or speaking with his own mother in over three years!!! Demons has and continues to be subjected to the type of debilitating isolation that renders his conditions of incarceration cruel, unusual and beyond belief in a civilized society governed by Constitutional safeguards. He has also had restrictions placed by detention officials designed to impede his interactions with his attorneys and his ability to prepare for trial on Capitol Murder Charges. His cruel treatment by the Broward Detention authorities warrants his immediate release from pretrial detention since the detaining authorities have shown such a callous disregard for his human dignity Right to Counsel.

## PARTIES

1. Petitioner, JAMELL M. DEMONS, is currently incarcerated at Broward County Jail, 555 SE 1st Avenue, Fort Lauderdale, Florida, 33301 where is awaiting trial in Case Number 19001872CF10A. He has been in custody since his arrest in February 2019.

2. Respondent: SHERIFF GREGORY TONY is the Sheriff of Broward County and responsible for the humane treatment and overall conditions of inmates in Broward County Detention facilities that is operated by the Broward Sheriff's Office.

## JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. § 2241 and the United States Constitution.

## BACKGROUND

4. Petitioner was arrested on February 13th, 2019, and has been in continuous custody since that date.

5. He proceeded to jury trial, but the Judge declared a mistrial in July 21, 2023 when the jury was not able to convict him.

6. In October 2023, Broward Circuit Court Judge John Murphy Granted the Petitioner's Motion to Disqualify the State Prosecutor in a Motion contending the State attorney withheld evidence.

7. A new set of prosecutors have come on and have done everything in their power to delay the trial from commencing. The case is currently stayed pending a ruling on an appeal taken by the State Attorney. Meanwhile the Plaintiff who remains in custody since February 2019 is continuously abused and denied bond.

8. The Petitioner has not been permitted phone or in person or any type of visitation with his family, including his mother for over three years.

9. In addition, the Respondents have placed unreasonable restrictions and interfered with the ability of his attorneys to interact with him.

10. This has included forcing his attorneys to wait for hours to see him, not letting them see him at all and forcing them to meet with him in conditions that interfere with and impede the privacy and privileged nature of his communications with his lawyers.

11. On or around late April 11, 2022, inmate Jamal Meyers filed a grievance report in retaliation of the Plaintff's refusal to purchase him food from commissary. Inmate Meyers filed a grievance report against not only Plaintiff but another inmate. Inmate Meyers alleged in part that Mr. Demons "was planning an escape by having his attorney bring in two handcuff keys to aid in the escape." (*Mr. Demons employs multiple criminal and civil attorneys.)

12. In response correction personnel conducted a shakedown of Plaintiff's cell and the other inmate's cell. In accordance with certain supplemental investigation report the shakedown of Plaintiffs cell unearthed commissary and excessive jail-issued clothes, which were confiscated and disposed of as per operational orders of the jail.

13. However, the other inmate on the dorm was found in possession of shanks, prescription drugs and other contraband. The inmate was subsequently charged for his possession of contraband. Plaintiff was found to have committed no wrongdoing, and the investigation closed as to the Plaintiff on April 11, 2022.

14. Despite doing no wrong the Plaintiff was moved from his current dorm into solitary confinement and all phone communication with the outside world ceased.

15. Shortly thereafter, two of Plaintiff's defense counsel attempted to visit him and were not allowed entry into the jail facilities. The facility refused to provide any reason as to the denial.

16. The following day Attorney Stuart Adelstein made an *ore tenus* motion regarding the jails interference with Plaintiff's right to counsel. Honorable Judge Andrew Siegal summoned **Broward Sheriffs Office attorney Christian Tsobous** to court .

17. Attorney Tsobous defended the actions of the facility stating there was an "open" investigation against Mr. Demons and further that he was a threat to the security of the jail because he was alleged by **attorney Tsobous** to have been found with a shank in his dorm.

18. Attorney Adelstein inquired if any of Mr. Demons defense team were at that time or ever under investigation, attorney Tsobous responded "NO."

19. Judge Andrew Siegal instructed attorney Tsoubous that the jail could not restrict the Plaintiffs contact with his attorneys and attorney Tsobous would have to come up with effectuate Plaintiffs visits with his attorneys.

20. As a result Plaintiffs visitation took place in a visitation booth located downstairs in the bond room.

21. The visitation booth did not accommodate Mr. Demons and his defense team in one sitting,

4

22. moreover it was impossible to review any documentation with Mr. Demons due to the Plexi-glass divider.

22. Not only was the visitation room not large enough to accommodate Defendant's attorneys, but anyone also standing outside of the room could hear everything that is said in the room violating Defendant's right to private and privileged communications.

23. On September 7, 2022 attorney Raven Liberty filed a Motion to Remove Visitation, Communication or Interaction Restrictions.  Prior to the hearing on the motion attorney Raven Liberty contacted Christian Tsobous in an effort to reach a resolution without hearing. Instead Raven Liberty was met with unhinged screaming from the BSO attorney questioning her about "What Do You Talk About?", "Why Do You Spend So Much Time With Him?"

24. Christian Tsoubous ended the conversation in telling attorney Raven Liberty that if she went forward with the hearing he would "embarrass her."

25. It is important to note that Plaintiffs defense team was not in possession of the Incident report so the defense team and the Court all relied on Mr. Tsoubous proffers to the court that have no been determined to be untruthful.

26. Despite the believable threat of character assassination Raven Liberty proceeded to hearing on the motion.  Christian Tsobousus ranted and raved about unverified allegations and the behavior of the Plaintiff. Despite Christian Tsobousos attempts to not only embarrass attorney Raven Liberty he failed, Tsoubus was instructed to accommodate visitation between Plaintiff and his attorneys that was free of third parties being able to listen.

27. On September 29, 2022 Raven Liberty was contacted by a reporter for an online media outlet an informed that unknown member of BSO contacted them and led them to believe she was the attorney that inmate Meyers was speaking about in his unfounded grievance.

28. As result of the accusations of the Broward Sheriffs Office, stories ran for weeks about the alleged nefarious escape plan between Raven Liberty and the Plaintiff.

29. The escape plan created by Broward Sheriffs Office was not the worst of it.

30. December 1, 2022 under the charge of **Captain Hubert**, Plaintiff without cause was moved to a unit inside the jail that that is meant to accommodate 24 inmates. Plaintiff was the only housed on the vacant unit , with no privileges, no television, and no access to a newspaper.

31. When Plaintiff was allowed his hour out of the cell all other inmates had to go back inside their cells.

32. Specifically, during December 2022 Lt. Jean Baptiste along with Sgt Anthony Kidd threatened Plaintiff if he told his attorneys about his treatment "they would hide him away from the world."

33. Plaintiff has not had phone privileges since May 8, 2022. The Plaintiff has not had private visitations with his defense team since March 2022.

34. As recently without reason Plaintiff was moved to the Paul Rein Detention Center and housed on a floor with no one else, his door had been removed from the cell, preventing any privacy, and he had a member of the emergency repose team shadowing hime 24 hours a day. They were instructed not to speak to him. Plaintiff went without any human contact for several months until again Broward Sheriffs Office moved him.

35. Florida Statute 901.24 states that, "A person arrested shall be allowed to consult with any attorney entitled to practice in this state, alone and in private at the place of custody, as often and for such periods of time as is reasonable."

36. The ongoing denial of Mr. Demons access to his attorneys' is not only preventing Mr. Demons attorneys' from properly preparing Mr. Demons defense but is in violation of not

only his 6th Amendment Rights but Florida law as well.

37. In order to punish and isolate Demons, the Respondents have isolated him and not permitted a single phone call or visit from family in over three years.

38. This isolation has inflicted enormous emotional impact on him and is designed to deteriorate his mental health and his ability to prepare for a trial that is now scheduled in September 2025.

39. These restrictions are not for security reasons and bare no rational relationship to any legitimate security interest.

40. The Respondents monitor the custody of thousands of inmates and have never imposed such restrictions.

41. No nonblack inmates currently have any such punitive restrictions.

## GROUNDS FOR PETITION

**Ground One:** The Respondent has illegally and improperly violated Petitioner's Constitutional guaranteed Right to Counsel and his ability to prepare for trial. These actions have been done with no due process and baring no relational relationship to any legitimate State interest. Thus, he is being illegally detained in violation of the Constitution of the United States.

**Ground Two:** The Respondent is being illegally detained under conditions that are cruel and unusual and that not only bare no rational relationship to any legitimate state interest but violate the Petitioner's Rights to due process and equal protection.

## EXHAUSTION OF REMEDIES

On September 7, 2022, and other dates, Petitioner has continuously sought relief in State Court which relief has been useless. Bringing these Constitutional depravations to the attention of the State Court and State authorities has not provided any relief.

## MEMORANDUM OF LAW

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution. Hence, for example, prisoners retain the constitutional right to petition the government for the redress of grievances" See, Johnson v. Avery, 393 U.S. 483 (1969); For instance they are protected against invidious racial discrimination by the Equal Protection Clause of the Fourteenth Amendment, Lee v. Washington, 390 U.S. 333 (1968); and they enjoy the protections of due process, Wolff v. McDonnell, 418 U.S. 539 (1974); Haines v. Kerner, 404 U.S. 519 [***76] (1972). The Court of Appeals for the Eighth Circuit affirmed. 777 F.2d 1307 (1985).

Under the U.S. Supreme Court's holing in Procunier v. Martinez, regulations, conditions and restrictions on jail inmates could be justified "only if it furthers an important or substantial governmental interest unrelated to the suppression of expression, and the limitation is no [****12] greater than necessary or essential to protect that interest." 777 F.2d, at 1310. Because prisoners retain these rights, "when a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." Procunier v. Martinez, 416 U.S., at 405-406.

For instance, correspondence regulations that are unnecessarily broad, the court concluded, because prison officials could effectively cope with the security problems raised by inmate-to-inmate correspondence through less restrictive means, such as scanning the mail of potentially troublesome inmates. Id., at 596. The District Courts have also held that the correspondence regulation had been applied in an arbitrary and capricious manner. Prison walls

do not form a barrier separating prison inmates from the protections of the Constitution. Hence, for example, prisoners retain the constitutional right to petition the government for the redress of grievances, Johnson v. Avery, 393 U.S. 483 (1969); they are protected against invidious racial discrimination by the Equal Protection Clause of the Fourteenth Amendment, Lee v. Washington, 390 U.S. 333 (1968); and they enjoy the protections of due process, Wolff v. McDonnell, 418 U.S. 539 (1974); Haines v. Kerner, 404 U.S. 519 [***76] (1972). The Court of Appeals for the Eighth Circuit affirmed. 777 F.2d 1307 (1985). The Court of Appeals held that the District Court properly used strict scrutiny in evaluating the constitutionality of the Missouri correspondence and marriage regulations. Under Procunier v. Martinez, supra, the correspondence regulation could be justified "only if it furthers an important or substantial governmental interest unrelated to the suppression of expression, and the limitation is no [****12] greater than necessary or essential to protect that interest." 777 F.2d, at 1310. Because prisoners retain these rights, "when a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." Procunier v. Martinez, 416 U.S., at 405-406.

Several factors are relevant in determining the reasonableness of challenged prison regulations.

First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. A second factor relevant in determining the reasonableness of a prison restriction, is whether there are alternative means of exercising the right that remain open to prison inmates. A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. Tuner v. Safley, 482 U.S. 78 (1987);

Kennedy v. Mendoza-Martinez, 372 U. S. 144, 372 U. S. 168-169 (1963)). We concluded:

"[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' Conversely, if a restriction or condition is not reasonably related to a legitimate goal -- if it is arbitrary or purposeless -- a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees."

441 U.S. at 441 U. S. 539 (footnote and citation omitted).

The Respondent's outrageous interference in the Petitioner's Right to Counsel and his ability to prepare his legal defense violates the United State Constitution. Likewise, the Respondent's isolation of the Petitioner and refusal to permit him to have contact with the outside world, including his mother and family for years is inhumane and patently unconstitutional.

### REQUEST FOR RELIEF

**WHEREFORE**, Petitioner respectfully requests that this Court issue a writ of habeas corpus, directing Respondents to Show Cause why he should not be released from unlawful detention and grant such other relief as the Court deems just and proper. Because of the abusive and outrageous violations of his Rights guaranteed by the United States Constitution coupled with the efforts by the State to delay his trial after years of custody, it is requested that this Honorable Court Order the Petitioner's immediate release from custody.

Respectfully submitted,

**MICHAEL A. PIZZI, JR., P.A.**
Florida Bar No. 079545
6625 Miami Lakes Drive, Suite 316
Miami Lakes, FL 33014
Tel: 786.594.3948

         Fax: 305-777-3802
         mpizzi@pizzilaw.com

         **By: /s/ *Michael A. Pizzi, Jr.***
         **MICHAEL A. PIZZI, JR.**

### SWORN VERIFICATION AND AUTHORIZATION

I declare under penalty of perjury under the laws of the United States of America and the State of Florida that I am authorized by the Petitioner to file this Petition on his behalf and that the facts contained herein are true and correct.

Executed this 2nd day of November 2024.

s/*Michael A. Pizzi, Jr,*
MICHAEL PIZZI, ESQ.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing document was e-filed via the CM/ECF E-Filing Portal and copies furnished electronically to all parties of record on this 2nd day of November 2024.

**By: */s/ Michael A. Pizzi, Jr.***
**MICHAEL A. PIZZI, JR.**