UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 0:24-cv-62080-DAMIAN

JAMELL M. DEMONS,

    Petitioner,

v.

GREGORY TONY, SHERIFF OF BROWARD COUNTY;
AND BROWARD COUNTY SHERIFF'S OFFICE,

    Respondent.
_____/

## PETITIONER'S REPLY IN SUPPORT OF HABEAS CORPUS PETITION

Petitioner JAMELL DEMONS files his reply in support of his habeas corpus petition and states as follows:

### I. INTRODUCTION

Based on the Broward Sheriff's Response, the record is now undisputed that in a death penalty case, Jamell Demons is not allowed to call any of his lawyers. Further, Demons is not allowed to meet with his lawyers without barriers that prevent him from preparing for his death penalty trial. And, Demons has been allowed no visitation or phone contact with anyone in the world, including his own mother for Christmas or on her birthday. Further, BSO does not care and has made it clear that this Federal Court has no Right to tell it what to do.

The Response of the Broward Sheriff's Office ("BSO") is shocking in its arrogance in admitting that it has engaged in conduct that can only be viewed as involving outrageous violations of the Petitioner's rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Despite the fact that the language and history of Section 2241 establishes petitioner's clear and sacred right to seek relief in federal court for prison officials' violations of his constitutional rights, BSO asks this Court to turn a blind eye and essentially abdicate its

responsibility to enforce federal constitutional limits on the arbitrary and capricious restrictions placed on a citizen's Constitutional rights. And BSO does so by citing certain doctrines that, by their very definition, have no applicability. Petitioner is asking this Court to stop prison officials including BSO lawyers from violating his clear Constitutional Rights. He is not asking this Court to stop his trial from going forward or interfere in how it is conducted. This Court's relief would be directed at administrative officials, not judicial officials.

Petitioner disputes BSO's factual assertions and justifications, requesting an expedited evidentiary hearing at which time Petitioner will demonstrate his entitlement to relief.

By its plain language, Section 2241 is the appropriate mechanism for a state inmate challenging the constitutionality of his conditions of custody. Clearly, Petitioner is NOT appealing a State Court judgment ("*Rooker-Feldman*") or State Court Order. Petitioner is not asking this Court to stay or interfere with Florida court proceedings by staying or interfering in the proceedings ("*Younger* Doctrine"). Finally, there are no requirements to further exhaust administrative remedies by the plain language of § 2241 (as opposed to § 2254) when a petitioner is challenging non-judicial administrative decisions of jail officials, especially in this instance when BSO describes the futility of the administrative process. Finally, this Court has the authority to Order remedies to these Constitutional violations short of release and without in any way interfering with his State trial.

## II. **BSO HAS ADMITTED TO ACTIONS CLEARLY VIOLATING PETITIONER DEMONS' CONSTITUTIONAL RIGHTS.**

BSO asserts that it has the right to violate Petitioner Demon's right to counsel by banning his lead attorney of record, Raven Liberty (and all his lawyers if she is present), from visiting him without a barrier, in a case in which the prosecution is seeking the death penalty. The

disingenuous BSO response admits that the Corrections Department is engaging in the following acts and intends to continue to do so in this death penalty case if this Court does not intervene:

1. They have forced Petitioner's attorneys to crowd into a bond room without the ability to communicate in private with the Petitioner.

2. They have unilaterally decided to deprive his lead attorney Raven Liberty of her ability to ever meet him in a setting where her conversations cannot be overheard by others and where she can show him documents, review transcripts, listen to tapes with him, or engage in any meaningful dialogue.

3. They have extended this deprivation to any attorney representing him if attorney Liberty is present and will continue through the date of trial to deny Demons the right to prepare for his homicide trial where he is facing the death penalty without the ability to review documents, listen to tapes, or review transcripts with his counsel of choice.

4. BSO admits it has deprived Demons and will continue to deprive him through the date of his death penalty trial with the right to call any of his lawyers, including undersigned counsel, ever. Demons is perhaps the only inmate in BSO custody who cannot call his lawyers, and even has no ability to telephone undersigned counsel.

5. BSO cut off all phone contact with all of Demons' lawyers.

6. BSO has isolated Demons so he can have no interaction with other inmates or anyone in the outside world, has done this for years, and intends to continue doing so.

7. BSO has prevented for years and will continue to prevent Demons from having phone contact or visitation by video or other means with his mother, his siblings, or anyone in the outside world, and will continue to do so through his trial.

8. Unlike other inmates who are alleged to have committed phone or visitor violations and have them modified for limited periods of 30 days, BSO has informed this Court that they have the right to deprive Demons of the ability to have phone privileges and visitors forever, even though he is presumed innocent.

Petitioner is asking the federal courts to do what is allowed by Section 2241 and take action to both remedy and prevent further violations of the Petitioner's rights protected by the U.S. Constitution.

### III. BSO'S RESPONSE CONTAINS FALSE AND INCOMPLETE ASSERTIONS THAT WILL BE DISPUTED AT AN EVIDENTIARY HEARING.

The Petitioner intends to and will contest the factual assertions in the BSO Response. A brief sample due to space limitations is as follows:

9. The Response is filed for the improper purpose of the ongoing harassment and slander of not only Petitioner but also specific members of his criminal defense team.

10. The Response contains known fabrications of fact and previous statements made in open court.

11. In 2022, a hearing was held before Broward Court Circuit Court Judge Andrew Siegal wherein Attorney Christian Tsoubanos represented that "Ms. Liberty's video visits were banned because she set up several -- 10, 20 - video visits using her

confidential lawyer pin, and gave that pin out to other people." See Defendants Exhibit "12" page 5.

12. BSO RESPONSE: "We have that coupled with the information from a credible source that one of his attorneys was going to bring handcuff keys into the facility for an escape, which causes the Sheriff great concern." But, the "credible source" was an inmate named Meyers, who was the same day put into a mental health holding cell and eventually moved out of the main jail due mental instability. To date, inmate Meyers has not been able to be contacted because his defense attorney is afraid of him and he has orders in place that he must have a face mask on when brought to court or visiting with his attorneys. Thus, BSO knows that the information that they presented to this Court to justify their violations of the U.S. Constitution is not true and in fact ludicrous.

13. BSO RESPONSE: Claims by Petitioner to criminally tamper with witnesses for his pending capital homicide charges, but also to prevent Petitioner from engaging in drug smuggling and other criminal activities with his fellow Blood Gang members. But, no one ever alleged that Mr. Demons was a Blood Gang member until 2020, when a person named Danny Polo came on the case and, all of a sudden, he is falsely accused of being a gang member. But, Mr. Demons does not have any gang tattoos and has never been initiated to a gang. His music and lyrics about gang association are made for First Amendment protected entertainment purposes.

14. Likewise, a recorded relay call on September 15, 2022, between Petitioner and his girlfriend spoke of Ms. Liberty conspiring with Petitioner to smuggle in contraband photographs. But, in the transcript attached to the Defendants' response, Christian

      Tsoubanos states: "Those barrier visits prevent the introduction of contraband into the facility, like personal photographs. If counsel will look at Statute 951.22, the definition of introduce contraband into a facility, the photo …"

15. However, this is not true. No search of Demo's cell has ever found any illegal drugs or weapons. Further, showing a client photos is not contraband as a matter of law. Florida Statute § 951.22 defines contraband as: Any written or recorded communication. This paragraph does not apply to any document or correspondence exchanged between a lawyer, paralegal, or other legal staff and an inmate at a detention facility if the document or correspondence is otherwise lawfully possessed and disseminated and relates to the legal representation of the inmate.

(b) Any currency or coin.
(c) Any article of food or clothing.
(d) Any tobacco products as defined in s. 210.25(12).
(e) Any cigarette as defined in s. 210.01(1).
(f) Any cigar.
(g) Any intoxicating beverage or beverage that causes or may cause an intoxicating effect.
(h) Any narcotic, hypnotic, or excitative drug or drug of any kind or nature, including nasal inhalators, sleeping pills, barbiturates, marijuana as defined in s. 381.986, hemp as defined in s. 581.217, industrial hemp as defined in s. 1004.4473, or controlled substances as defined in s. 893.02(4).
(i) Any firearm or any instrumentality customarily used or which is intended to be used as a dangerous weapon.
(j) Any instrumentality of any nature which may be or is intended to be used as an aid in effecting or attempting to effect an escape from a county facility.
(k) Any cellular telephone or other portable communication device as described in s. 944.47(1)(a)6., intentionally and unlawfully introduced inside the secure perimeter of any county detention facility. The term does not include any device that has communication capabilities which has been approved or issued by the sheriff or officer in charge for investigative or institutional security purposes or for conducting other official business.
(l) Any vapor-generating electronic device as defined in s. 386.203, intentionally and unlawfully introduced inside the secure perimeter of any county detention facility.

16. Not only are photographs not contraband under the criminal statue, it is a legal impossibility that Christian Tsoubanos' comments were truthful because all attorneys have been behind glass, and other than Stuart Adelstein, all visits with any member of the defense team were behind glass.

17. Petitioner is not permitted to meet the other attorneys he employs with no barrier as much as he wants in private professional visitor rooms, which despite the BSO claims. This is not true.

18. The exhibits reference disciplinary reports that do not exist. It is untrue that the conditions imposed, namely a barrier visit with Ms. Liberty, were done for legitimate security purposes. As already discussed, the 'glass barrier' [ECF 1, ¶21] is only in place for attorney visits in which Petitioner's "defense team" includes Ms. Liberty.

19. Paragraph 80 is a fabrication. The Response states: "On March 29, 2024, another search was conducted in Petitioner's housing unit. *See* incident report attached hereto as Exhibit 18. Papers containing pictures and 2 kites were discovered in Petitioner's cell." The Exhibit referenced as "18" is a supplemental police report that details the shakedown of Petitioner's cell, and the items confiscated were detailed as "sheets of paper containing gang information."

20. There is no mention of lewd photos, papers containing pictures, or kites. "So based on the phone call that she, Ms. Liberty, is smuggling into the facility photographs of girlfriend, the jail is continuing to ban her specifically from having contact visits with Mr. Demons, and based on the fact that she used Ms. Liberty's name, the two male attorneys are now allowed in-person contact visits because that has dispelled that they are the subject of that introduction of contraband."

21. Again, all searches of his cell have not yield weapons or escape materials. BSO knows full well that the allegations that attorney Raven Liberty intended to smuggle handcuff keys is a totally discredited fabrication. They further know that likewise, the allegations that Demons has weapons or other contraband is his cell was a fabrication. But, this did not deter BSO from presenting this information that they know has no credibility to this Court.

22. In sum, there is no justification for the ongoing Constitutional violations. The handcuff key story, the gang story and other slanderous allegations are not accurate.

23. Further, the remedy for phone violations for other inmates has been brief suspensions and not permanent deprivation.

**IV.   THIS COURT HAS JURISDICTION TO HEAR THIS MATTER AND THERE IS NO PROCEDURAL BAR**

   **A.   *Rooker-Feldman* and *Younger* Abstention Doctrines Are Not Applicable.**

*Turner* v. *Safley,* 482 U.S. 78 (1987), and *Overton* v. *Bazzetta,* 539 U.S.126 (2003), contain the basic substantive legal standards governing this case. The Supreme Court has recognized in *Turner* that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment. *Id*., at 93; *see also O'Lone* v. *Estate of Shabazz,* 482 U.S. 342, 348 (1987).

*Forchion v. Intensive Supervised Parole*, 240 F.Supp 2d 302 (D.N.J.), provides only one of many excellent explanations as to why the *Rooker-Feldman* and *Younger* doctrines provide no basis to deprive this court of jurisdiction to enjoin federal constitutional violations of the rights of a state inmate. As the District Court stated, to wit: "The most immediate issue for this Court is

whether abstention is appropriate in these circumstances. Defendants claim that under the *Rooker-Feldman* doctrine this Court cannot review the ISP Resentencing Panel's decisions. The *Rooker-Feldman* doctrine states that "a party's recourse for an adverse decision in state court is an appeal to the appropriate state appellate court, and ultimately to the Supreme Court," *Parkview Associates Partnership v. City of Lebanon,* 225 F.3d 321, 324 (3d Cir. 2000), and so therefore only state appellate courts or the United States Supreme Court can review the decisions of state courts for constitutional error. *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of New York and New Jersey Police Dep't,* 973 F.2d 169, 177 (3d Cir.1992). However, the doctrine only applies when the action taken by the state body is judicial, and not legislative, ministerial, or administrative, in nature. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 479, 103 S. Ct. 1303 (1983) (noting that an administrative action is one involvin rulemaking of some sort and does not involve the interpretation and application of existing law). "The *Rooker-Feldman* doctrine does not apply to this case. The ISP Resentencing Panel has final authority over the Plaintiff and there is no way of appealing its decisions. Accordingly, this Court does have the authority to review the decisions of the panel. In addition, the Panel is acting in many ways as an administrative, rather than judicial, body."

Further, "Abstention under the *Younger* doctrine is also a relevant issue in this case. *Younger v. Harris,* 401 U.S. 37, 91 S. Ct. 746 (1971). The *Younger* doctrine states that federal courts cannot intervene in a matter when (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; and (3) there is an adequate opportunity in the state judicial proceeding to raise constitutional challenges. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S. Ct. 2515 (1982); *Port Auth. Police Benevolent Ass''n, Inc.,* 973 F.2d at 173.

While there is an ongoing state proceeding taking place, the ISP Resentencing Panel, that proceeding is not judicial in nature. Simply because three judges sit on the ISP Panel does not mean the Panel itself is performing a judicial function. While many administrative proceedings are considered to be judicial in nature, that is not always the case. *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 627 n. 2, 106 S. Ct. 2718 (1986) (abstention may not be appropriate where the administrative proceedings are expressly considered not to be "judicial in nature")." *Santiago-Lugo v. Warden*, 785 F.3d 467 (11th Cir. 2015): "We start with the jurisdiction issue, asking whether a § 2241 petitioner's failure to exhaust administrative remedies is a jurisdictional defect. We conclude that it is not, meaning that even if Santiago-Lugo failed to exhaust his administrative remedies, we and the district court would still have jurisdiction over his claim. The district court reached the opposite conclusion by relying on five decisions from this Court. *See Skinner v. Wiley,* 355 F.3d 1293, 1295 (11th Cir. 2004); *Winck v. England,* 327 F.3d 1296, 1306 (11th Cir. 2003); *Gonzalez v. United States,* 959 F.2d 211, 212 (11th Cir. 1992); *United States v. Lucas,* 898 F.2d 1554, 1555 (11th Cir. 1990); *United States v. Mitchell,* 845 F.2d 951, 952 (11th Cir. 1988). Of those five decisions, only our opinion in *Gonzalez* actually held that failure to exhaust administrative remedies deprives a court of subject matter jurisdiction over a § 2241 petition, and it only *ipse dixited* that "[e]xhaustion of administrative remedies is jurisdictional." 959 F.2d at 212. And *Gonzalez* reached that conclusion not because § 2241 actually addressed the scope of our jurisdiction over § 2241 petitions, but because we had held in other decisions that exhaustion that was explicitly required by the governing statutes was jurisdictional with respect to the other inmate claims brought under those statutes. *Id.*

B. **The Exhaustion of State Remedies Doctrine Does Not Bar Relief.**

"Although the statutory language of § 2241 itself does not contain a requirement that a petitioner exhaust state remedies, [the Eleventh Circuit] ha[s] held that the requirements of § 2254 - including exhaustion of state remedies - apply to a subset of petitioners to whom § 2241(c)(3) applies: those who are 'in custody pursuant to the judgment of a State court.'" *Dill v. Holt*, 371 F.3d 1301, 1302 (11th Cir. 2004) (quoting *Medberry v. Crosby*, 351 F.3d 1049, 1059 (11th Cir. 2003)). However, the exhaustion requirement is excused if "there is either an absence of available State corrective process[ ] or . . . circumstances exist that render such process ineffective to protect the rights of the applicant." §§ 2254(b)(1)(B)(i) and (ii).

"The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015).

**Further State Court Relief Is Not Available.**

Having been denied relief in the state courts when Circuit Judge Siegel declined to order constitutional access to Petitioner, there was no remaining effective state court review available at that time. The Circuit Court ruling was not appealable or reviewable as a matter of right, and trial court orders in criminal cases are not ripe for review until the entry of a final judgment, in which case the constitutional violations would continue through the outcome of the Petitioner's death penalty trial and sentencing. Therefore, without any effective remedy to seek state court review of the unconstitutional administrative conditions of the Petitioner's incarceration, federal court relief through § 2241 is the only available remedy to cure the unconstitutional conditions presented in this case.

The Eleventh Circuit has held explicitly that it reversible error for a district court to dismiss or decline on jurisdictional grounds at this stage a Section 2241 Habeas Corpus Petition on grounds

of failure to exhaust state administrate remedies. *See Santiago v-Lugo v. Warden*, 785 F.3d 467 (11th Cir. 2015). As the unanimous 11th Circuit held is that case in language applicable here: "Applied to § 2241, the Supreme Court's decisions in *Thaler* and *Reed Elsevier*, both of which came after our *Gonzalez* decision, compel the conclusion that *Gonzalez* was wrong. Congress has not stated that the § 2241 exhaustion requirement "shall count as jurisdictional." In fact, Congress said nothing at all in § 2241 about exhaustion, which is a judge-made requirement. Section 2241 itself does not impose an exhaustion requirement, let alone one that "speak[s] in jurisdictional terms or refer[s] in any way to the jurisdiction of the ... courts." *Reed Elsevier*, 559 U.S. at 165, 130 S. Ct. at 1246. There is nothing in the statute to support the conclusion that the judicially imposed exhaustion requirement is jurisdictional. The district court also relied on one Supreme Court decision, *see Porter v. Nussle,* 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), but that reliance was misplaced. The *Porter* decision held that an inmate had to exhaust administrative remedies before bringing a 42 U.S.C. § 1983 lawsuit under the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(a). It did not hold, however, that an inmate's failure to exhaust administrative remedies deprived courts of subject matter jurisdiction over a 28 U.S.C. § 2241 petition or any other type of claim.

Congress knows how to limit courts' subject matter jurisdiction to decide § 2241 petitions when it wishes to do so. The fact that it did not limit subject matter jurisdiction to decide unexhausted § 2241 claims compels the conclusion that any failure of *Santiago–Lugo* to exhaust administrative remedies is not a jurisdictional defect. *Cf. Thaler,* 132 S. Ct. at 649 ("The unambiguous jurisdictional terms of §§ 2253(a), (b), and (c)(1) show that Congress would have spoken in clearer terms if it intended § 2253(c)(3) to have similar jurisdictional force. Instead, the

contrast underscores that the failure to obtain a COA is jurisdictional, while a COA's failure to indicate an issue is not.").

For all of those reasons, we conclude that our *Gonzalez* decision is a purely posthumous precedent. It is no longer the law of this circuit that exhaustion of administrative remedies is a jurisdictional requirement in a § 2241 proceeding.

To the extent that other published decisions of this Circuit have held or stated that exhaustion is a jurisdictional prerequisite to § 2241 relief, they too have been undermined to the point of abrogation. *See, e.g., United States v. Williams,* 425 F.3d 987, 990 (11th Cir. 2005); *Skinner,* 355 F.3d at 1295; *Winck,* 327 F.3d at 1300 n. 1; *Boz v. United States,* 248 F.3d 1299, 1300 (11th Cir. 2001).

*Thompson v. Choinski*, 525 F.3d 205, (2d Cir. 2008), holds that a prisoner's conditions-of-confinement claim was appropriate under a habeas petition where he was denied access to the prison library, denied kosher food, and contested prison discipline. "The government concedes that these claims relating to improper imposition of discipline were properly pleaded under § 2241 (and thus consents to the remand), although it argues, relying on *Muhammad v. Close*, 540 U.S. 749, 124 S. Ct. 1303 (2004), that this is not because of the resulting conditions of confinement but rather because improper imposition of prison discipline would "affect the . . . duration of his confinement" by depriving him of good time credit. We find the government's reliance on *Muhammad* puzzling. That case involved a state prisoner's attack in federal court on the conditions of his confinement pursuant to a state court sentence. The federal statutory scheme for adjudication of claims protesting the lawfulness, duration, or conditions of confinement pursuant to a state court sentence is different in several respects from the scheme for protesting the lawfulness, duration, or conditions of confinement pursuant to a federal court sentence. What the

Supreme Court said in *Muhammad* about the propriety of using 28 U.S.C. § 2254 to challenge conditions of confinement in the service of a state sentence would not necessarily apply to the propriety of a claim under § 2241 to challenge conditions of confinement in the service of a federal sentence. However, we need not resolve the question. If the claim was properly made in federal court, the district court should not have dismissed it, even if the legal source of the claim was misidentified.

First, to the extent *Thompson* was seeking injunctive relief from federally imposed conditions of confinement in the service of his federal sentence, we understand neither why the district court believed that the claim should have been styled a civil rights complaint rather than a petition under § 2241 for a writ of habeas corpus, nor what sort of civil rights claim the court envisioned. This court has long interpreted § 2241 as applying to challenges to the execution of a federal sentence, "including such matters as the administration of parole, . . . prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian*, 245 F.3d at 146 (citing *Chambers v. United States*, 106 F.3d 472, 474-75 (2d Cir. 1997)); *see also Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (challenge by federal inmate to administrative proceedings conducted by federal officials properly brought under § 2241); *Roba v. United States*, 604 F.2d 215, 219 (2d Cir. 1979) (citing *Kahane v. Carlson*, 527 F.2d 492, 498-500 (2d Cir. 1975) (Friendly, J., concurring)).

*"Turner* requires prison authorities to show more than a formalistic logical connection between a regulation and a penological objective. A prisoner may be able to marshal substantial evidence that, given the importance of the interest, the Policy is not a reasonable one. *Cf*. 482 U.S., at 97-99 (striking down prison policy prohibiting prisoner marriages). And with or without the assistance that public interest law firms or clinics may provide, it is not inconceivable that a

plaintiff's counsel, through rigorous questioning of officials by means of depositions, could demonstrate genuine issues of fact for trial." *Beard v. Banks*, 548 U.S. 521 (2006).

## CONCLUSION

For all these reasons, it is requested that this Court hold an expedited evidentiary hearing and, at the conclusion, enter an Order that will provide the appropriate judicial remedies to the ongoing Constitutional violations.

Respectfully submitted,

**MICHAEL A. PIZZI, JR.**
Florida Bar No. 079545
6625 Miami Lakes Drive, Suite 316
Miami Lakes, FL 33014
Phone: (786) 594-3948
Email: mpizzi@pizzilaw.com

By:      */s/ Michael A. Pizzi, Jr.*
**MICHAEL A. PIZZI, JR., ESQ.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **January 2, 2025**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counselor parties who are not authorized to receive electronically Notices of Electronic Filing.

By:      */s/ Michael A. Pizzi, Jr.*
**MICHAEL A. PIZZI, JR., ESQ.**